THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ERNESTO RODRÍGUEZ VALLEJO, Defendant and Appellant.

No. CR-69-176.          Decided February 25, 1972.

---

426

*Benjamín Ortiz* and *Graciani Miranda Marchand* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Juan José Ríos Martínez* and *Federico Rodríguez Gelpí, Assistant Solicitors General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

Appellant and Erbin Maurás Fuentes[1] were jointly accused of the offense of grand larceny, §§ 426 to 428 of the Penal Code, 33 L.P.R.A. §§ 1681 to 1683. The jury, by a vote of nine to three, found them guilty of the offense charged and they were sentenced to serve indeterminate sentences of from 2 to 6 years in the penitentiary. Their criminal act consisted in that on February 23, 1967, the codefendants, pretending to be authorized, without actually being so, to take steps for the recovery of a debt, succeeded in having the aggrieved party, Jesús Manuel Sánchez Báez, deliver to them a check in the sum of $300 as a part payment of the same, the codefendants

---

[1] The name of this individual appears in the original record written in different forms. Sometimes it appears as "Erbin," others, as "Elbin," and others, as "Elvin." It is possible that these names are distortions of the English name, Irving.

taking possession of the amount of said check for their own benefit.

The facts, more detailed, are as follows: The aggrieved party, Jesús Manuel Sánchez, owed $429.23 to the firm Construction Machinery Supply Co. The latter entered into a contract with a collection agency called Comercial San Miguel, in order that the latter recover said debt. Ángel San Miguel was the President of Comercial San Miguel. Appellant and codefendant, passing themselves for agents of the collection agency Comercial San Miguel, deceived the debtor Jesús Manuel Sánchez and thus obtained from him a check in the amount of $300 to be supposedly credited to the aforementioned debt. The codefendants took possession of the amount of said check.

■ The evidence for the defense established a conflict in the evidence in regard to whether or not the codefendants had authority from Comercial San Miguel to take steps for the recovery of the debt. Ángel San Miguel, President of the collection agency, admitted that he and a brother of appellant had operated the collection agency in partnership, but he testified that at the time of the events that partnership had been liquidated and he also testified that appellant had never worked for him nor had been authorized to collect that debt. In this and other particulars the evidence for the prosecution and the evidence for the defense are conflicting, but it was incumbent on the jury to settle that conflict, either believing one or the other party or favoring an eclectic hypothesis of the evidence worthy of credibility. We believe that the circumstances of the case do not justify us to disturb the findings of the jury. *People* v. *Iturrino de Jesús*, 90 P.R.R. 687, 692 (1964). One of the three errors assigned, which consists in challenging the weighing of the evidence by the jury, was not committed.

Another error assigned consists in that "that evidence did not establish the offense of larceny, but it established the

offense of false pretenses or of embezzlement." This error was not committed because the evidence believed by the jury showed the commission of the offense of grand larceny. Let us see.

■ As it is known, the offense of larceny is committed by the felonious stealing, taking, carrying, leading, or driving away the personal property of another, and it is grand larceny when the property taken is of the value of one hundred dollars and upwards. 33 L.P.R.A. §§ 1681 and 1683. Embezzlement is the fraudulent appropriation of property by a person *to whom it had been entrusted.* Section 445 of the Penal Code, 33 L.P.R.A. § 1721. The difference between the crimes of embezzlement and larceny consists in that in the former the accused is legally in possession of the property when he appropriates it illegally, while in the latter the accused, without having the legal possession of the property, appropriates it illegally. Therefore, we have said that a fiduciary relation between the injured party and the accused is an element of the crime of embezzlement. *People* v. *Ríos,* 69 P.R.R. 774, 777 (1949).

■ In the case at bar there is not, nor was there ever, a fiduciary relation since the codefendants obtained the property (in this case a check), making use of a trick or deceit. It is established that the unlawful taking, which is an element of the offense of larceny, may be carried out by means of fraud or trickery. Codefendants made use of fraud and deceit to obtain the unlawful possession of the check and having obtained the possession in that manner constitutes taking with criminal intent sufficient to support the verdict of the jury for the offense of larceny. *People* v. *Ríos, supra* at 779–780; *People* v. *Andrade González,* 88 P.R.R. 845, 847, *in fine* (1963).

Under the title of False Personation and Cheats, the Penal Code includes a series of criminal situations which do not necessarily include the unlawful appropriation of property,

such as false personation to marry, to become bail or surety, to acknowledge instruments, to receive money, for fraudulent conveyance of property, to defraud, for resale of property sold, etc. 33 L.P.R.A. §§ 1811–1823.

■ The fact that there is or that there may be any overlapping[2] between the offense of larceny and some sections of the Code grouped under the title of False Personation and Cheats does not eliminate the offense of larceny as it is defined by § 426. It is possible that a situation of facts may constitute larceny, and, for example, constitute also a violation of § 468 of the Penal Code, 33 L.P.R.A. § 1813—to receive money under false personation. That does not mean that due to that possibility an offense of larceny cannot be punished when the information, the facts, and the definition of that offense are completely consonant. The fact that a defendant may be prosecuted under a section of the Penal Code and it is not done, does not make it legally impossible to prosecute him under another section which also covers the situation properly at law. The Penal Code itself recognizes that possibility when it provides in its § 44, 33 L.P.R.A. § 90, that an act or omission which is made punishable in different ways *by different provisions of this Code,* may be punished *under either of such provisions,* but in no case can it be punished under more than one.

As it is known, our Penal Code comes from the United States Penal Code. Under the ancient common law the felonies were punished with death penalties and theft was considered a felony. As time went by the death penalty was considered too severe for any case of theft[3] and the judges started to

---

[2] This overlapping is due to historical reasons which we will mention briefly hereinafter and it has been acknowledged as a reality of the penal law. *Morissette* v. *United States,* 342 U.S. 246, 271 (1952).

[3] Larceny was considered a serious offense punishable with the death penalty when the thing stolen exceeded twelve pence, amount which was equivalent then to the price of a sheep, but which today is not even 25 cents of a dollar. Money was then scarce and it was worth more than now.

distinguish with subtleties the situations in order to avoid the death penalty in cases where it seemed too severe to do so. This judicial tendency caused many loopholes in the penal law of the common law and that, in turn, brought as a consequence the lawmaker's wish to go into that matter. A series of statutes were approved to cover cases of unlawful appropriation of property which the judges of the common law did not consider to be thefts, for the aforesaid reasons. Hence, a series of corrections which rendered the penal law concerning these situations somewhat deficient were made. The enacted offenses of embezzlement and of false personation are the product of the need which the lawmaker found to fill gaps in the common law.

That situation gave rise, here as well as there, to many frustrations of justice in cases of unlawful appropriation of property. For example, that division of a simple punishable act—the unlawful appropriation of the property of another —by being divided into several modalities (larceny, embezzlement, false personation), gives rise at the trials to a series of contentions which are not relevant to the merits of the case, that is, whether or not there was unlawful appropriation.

The important thing, of course, and which should be the essential element in all cases of unlawful appropriation of property, is whether or not the defendant appropriated in an unlawful manner, property which was not his. It is of very little importance for justice whether he stole them, or whether he appropriated them after "they had been entrusted to him," etc. As it is properly stated by some writers, the unlawful appropriation of another's property should constitute only one offense, which could be called theft, since the name is not the important thing, and thus the source of confusion which the arbitrary division of that punishable act into several statutory offenses constitutes would be eliminated. A writer tells us that some jurisdictions are already working in that sense:

to repeal the offenses of embezzlement and of false personation, and to cover all those situations, including that of larceny, with the name of theft. Perkins, *Criminal Law* 187–190, 240–243, 252–254 (1957); Clark & Marshall, *Law of Crimes* 706 *et seq.* (6th ed., 1958).[4]

■ The third and last error assigned is to the effect that the court erred "in denying a motion for nullity of verdict or of new trial filed by the defendant before the judgment was rendered, and not giving an opportunity to the defendant to present evidence about the statements of some jurors when deliberating about the verdict in regard to particulars not covered by the evidence and which were prejudicial to the defendant." Let us examine the situation alleged in this assignment.

After the jury returned its verdict and before judgment was rendered, the defendant filed a Petition for New Trial in which, insofar as pertinent, he alleged "that the ladies and gentlemen of the jury . . . received evidence out of court, without said evidence being the result of an ocular inspection" and that they considered defendant's silence to his prejudice and they convicted him for not having explained his relationship with Ángel M. San Miguel (the president of the collection agency). In said motion the court was requested to hold a hearing in which the defendant would present evidence to substantiate the allegations of his petition for a new trial.

The petition for new trial was not accompanied by any sworn statements of third persons in support of its contentions, except that it was signed and sworn to by petitioner.

---

[4] Something similar happens today in Puerto Rico with the theft of automobiles and the larceny of use. In Puerto Rico, an automobile generally costs from $1,000 to $10,000. The offense should be one of larceny, for which it is necessary to repeal the offense of larceny of use of automobile, which merely constitutes a misdemeanor. 33 L.P.R.A. § 1700. This last offense provides a convenient getaway in many cases of theft of automobiles. In Puerto Rico, about 7,000 automobiles are stolen every year—slightly more than 24 every 24 hours.

Subsequently and before a decision was made in regard to the petition, appellant presented an informative motion, which was not sworn to, in which he stated that his petition for new trial relied on the oral testimony of Amelia Rivera Marcano and Teresa Díaz. The former had been a member of the jury in the case and about the latter it is said that she is stenotypist in the Bayamón Part of the Superior Court. In said informative motion the petitioner says that Amelia Rivera Marcano had stated that while the jury was deliberating, the fact that defendant had killed a man, that he had been acquitted, and that he was a criminal, was brought to light and was considered in said deliberations. About Teresa Díaz, the petitioner states in his informative motion that another member of the jury, Ramona Vázquez Fonalledas, told Teresa that she had voted to convict the defendants, because the latter had not testified nor explained their relationship with San Miguel. The petitioner also sets forth that Amelia Rivera Marcano, as well as Teresa Díaz, had refused to give sworn statements about those particulars.

At the hearing held for the discussion of the motion for new trial, the appellant did not present any evidence whatsoever to support the motion, but he limited himself to repeat the allegations contained in the informative motion. The defense stated that Mrs. Rivera Marcano and Teresa Díaz had expressed their desire not to testify. The court denied the motion for new trial and stated that it was not necessary to summon the two ladies, because even if what they testified was true, that would not be sufficient to move the court to grant a new trial in view of the fact that a jury cannot impeach its veracity, according to the decision in *People v. Lebrón*, 47 P.R.R. 408 (1934), and *People v. Emmanuelli*, 67 P.R.R. 626 (1947).

Let it be noted that the court did not refuse to admit the evidence, as alleged by appellant in his assignment of error, but that it was appellant himself who did not present evidence

to substantiate his allegations and he limited himself to tell the court to summon the witnesses if his contention had merit. The court decided that the contention did not lie, and that therefore, it was not necessary to summon the witnesses. So that, at no time did the court refuse to admit evidence, but the truth is that the presumptive witnesses in whose alleged oral testimonies the petition for new trial relied, refused to testify. In effect, what appellant sought was to reverse the order of the proceedings, for instead of requesting the appearance of the witnesses through subpoena, under Rule 235 of the Rules of Criminal Procedure, he requested the court to decide on the matter of granting a new trial without previously establishing the facts upon which the court could reach a conclusion.

There is nothing in the record to show that the witnesses had testified what appellant alleged in his petition for new trial and in his informative motion. The court concluded that it could not grant a new trial relying only on hearsay evidence—that of petitioner himself—and we understand that it did not abuse its discretion. As it is known, the granting of new trial rests within the sound discretion of the court, except when evidence is presented to substantiate any of the reasons to grant a new trial established by Rule 188 of the Rules of Criminal Procedure. Such a thing did not happen in the instant case. When a motion for new trial is grounded on facts which do not appear in the record, the defendant is bound to establish them at the hearing of the motion, through competent evidence, resorting, if necessary, to the subpoena of witnesses, under Rule 235. This third error was not committed.

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.